SCRIBNER et al. v. STRAUS et al.

CHARLES SCRIBNER'S SONS v. SAME.

(Circuit Court of Appeals, Second Circuit. June 16, 1906.)

Nos. 185, 186.

1. COPYRIGHTS—INFRINGEMENT—SALE OF COPYRIGHTED PUBLICATIONS.

Where an association of publishers of copyrighted books printed notices therein that the books were sold on condition that prices be maintained as provided by the regulations of the American Publishers' Association, but there was no statement in the notice or blanks used in the sale of the books of any claim of right under the copyright law, the question of the liability of a purchaser of such books for failure to maintain prices by reason of such notice was not one of infringement of copyright, but as to whether the publishers were entitled to relief in equity by virtue of their common-law rights independent of their statutory copyright.

2. COURTS—FEDERAL COURTS—JURISDICTION.

Where, in a suit in the federal courts to restrain the sale of complainants' copyrighted publications at less than regular prices, there was neither diversity of citizenship nor claim for damages in the sum of $2,000, questions not arising out of the copyright law could not be considered.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 833.]

3. COPYRIGHTS—COPYRIGHTED PUBLICATIONS—SALE—RESTRICTIONS—ASSENT.

Where members of an association of publishers of copyrighted books sold the same through jobbers to persons who would not agree to sign a contract to maintain prices, assent to such contract could not be implied from mere purchasers of books which might have been lawfully sold or bought on an express refusal to sign such agreement.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, § 47.]

**4. SAME—CONTRIBUTORY INFRINGEMENT.**

Where there was no proof of any reservation of right in a copyright of certain copyrighted publications by their owner, or of an agreement by dealers from whom defendant purchased to abide by the rules adopted by an association of such publishers to maintain prices, or of any wrongful attempt on defendant's part to induce its vendors to break any contract with such publishers, defendant's sale of such publications for less than the regular price did not constitute a contributory infringement of the copyright.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 139 Fed. 193.

These causes come here upon appeals from decrees dismissing bills alleging infringement of copyright.

Stephen H. Olin, for appellants.

Edmond E. Wise and John C. Carlisle, for appellees.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The facts herein are as follows:

The complainants, under the firm name of Charles Scribner's Sons, are publishers and sellers of books. The defendants are partners under the firm name of R. H. Macy & Co., and are carrying on the business of a department store, wherein they sell, at retail only, books, copyrighted and uncopyrighted.

About the year 1901, certain publishers of copyrighted books formed an association, known as the "American Publishers' Association," and, in pursuance of a "plan to correct some of the evils connected with the cutting of prices on copyrighted books," its members agreed, inter alia, as follows:

"(3) That the members of the association agree that such net copyrighted books and all others of their books shall be sold by them to those booksellers only who will maintain the retail price of such net copyrighted books for one year, and to those booksellers and jobbers only who will sell their books further to no one known to them to cut such net prices, or whose name has been given to them by the association as one who cuts such prices, or who fails to abide by such fair and reasonable rules and regulations, as may be established by local associations as hereinafter provided."

Defendants refused to enter said association or to abide by any of its rules, and sold books at prices less than those fixed by the association; thereupon it issued a circular, requesting all publishers and booksellers to refuse any dealing of any kind with defendants, and complainants, who were members of said association, refused to sell any books to defendants. Thereafter, defendants bought books from other dealers, including those published by complainants, and sold them at such prices as they saw fit. Their purchases were made from people who knew that they intended to sell them at less than the prices fixed by the association. Complainants thereupon brought this suit against defendants to restrain them from selling complainants' copyrighted books at prices less than those fixed by complainants, and from buying any of such books except under the rules and regulations of said association.

Complainants caused to be printed at the head of their catalogues, and on their invoices and bills for goods, the following notice:

"Copyrighted net books, published after May 1, 1901, and copyrighted books published after February 1, 1902, are sold on condition that prices be maintained as provided by the regulations of the American Publishers' Association."

Complainants admitted that no other method was taken to bring the rules of the association to the notice of purchasers in the wholesale department, and that they could not say whether or not these rules were, in one way or another, brought to the attention of every purchaser from the wholesale department; but that notice was given, in case of a new purchaser, by correspondence and by sending the following blank:

"American Publishers' Association.

"————————, 190—.

"In consideration of discount allowed on books bought from ——— we hereby agree that for one year from date of publication we will not sell net books at less than the retail prices fixed by the respective publishers, nor fiction published after February 1, 1902, at a greater discount than 28 per cent. at retail, as provided by the rules of the American Publishers' Association. We further agree that we will not sell books published by members of the American Publishers' Association to any dealer known to us to cut prices of net books or of new fiction except as above provided."

Complainants admitted that, if dealers were asked to sign this notice and refused to sign it, the trade was still allowed to sell to them, and would sell to them. On the other hand, if a new member of the trade, or one about whom the trade was in doubt, made application for books, the matter was referred to the association before sales were made, and the pledge to the association was executed before deliveries were made.

Complainants say that the question presented is the following:

"Where the proprietor of a copyright sells copies of his copyrighted book by a conditional sale, subject to a restriction upon further sale, and to a purchaser who agrees to comply therewith, are these copies of the book released from the monopoly as against persons having notice of the restrictions?"

Upon this assumption of fact complainants argue that the same rule should be applied as in restricted sales in patent cases, namely:

" 'To the extent that the sale is subject to any restriction upon the use or future sale, the article has not been released from the monopoly, but is within its limits, and, as against all who have notice of the restriction, is subject to the control of whoever retains the monopoly.' National Phonograph Co. v. Schlegel, 128 Fed. 733, 735, 64 C. C. A. 594."

—and that defendants, by inducing booksellers to break their contracts, are guilty of contributory infringement of copyright. Complainants further seek to take advantage of the rules established in cases of restricted sales of proprietary articles manufactured under secret processes.

The questions raised herein are discussed in the opinion of this court in the case of the Bobbs-Merrill Company against these defendants, decided at this term of court. For the reasons therein stated, we are of the opinion that the claims arising out of the

peculiar rights attached to articles made by secret processes, or the statutory rights in articles protected by patents or copyright, do not directly bear upon the questions raised herein, although the discussions in some of said cases cover the principles applicable to this case.

There is no statement in the printed notice or blanks of any claim of right under the copyright law. The question of liability by reason of such notice is not one of infringement of copyright. The question is one as to the right of these complainants to relief in a court of equity, by virtue of their common-law rights, independent of statutory copyright, in view of the fact that they have issued, as above, printed notices that

"Copyrighted books * * * are sold on condition that prices be maintained as provided by the regulations of the American Publishers' Association," etc.

But this question is not open to discussion in these cases, as there is neither the diversity of citizenship, in the first case, nor the claim of damages in the sum of $2,000, in either case, requisite to confer jurisdiction of questions not arising out of the copyright law.

The complainants further contend that defendants have been guilty of contributory infringement of copyright because they, knowing of complainants' refusal to sell, except upon condition that the rules of the Publishers' Association should be obeyed as to resale and maintenance of prices, "designing and contriving to benefit themselves at the expense of and to the injury of your orators, have, as your orators are informed and believe, in the borough of Manhattan and elsewhere in the United States, induced and persuaded sundry of the jobbers and dealers who have obtained from your orators as aforesaid books published under the above enumerated copyrights, to deliver the same books to the defendants for sale at retail at less than the net retail prices fixed by your orators for such books respectively, in violation of the agreement, conditions and restrictions upon which as aforesaid the said jobbers and dealers have obtained such books and hold the same as aforesaid; and the defendants have thus induced such jobbers, booksellers and dealers to break and violate the agreement and condition as to maintaining prices and selling to no one known to cut net prices, so as aforesaid made and assumed by them." The answer "admits, on information and belief, that the complainants have made all sales of books subject to the rules of the American Publishers' Association as set forth," but denies all the allegations as to attempts on defendants' part to induce dealers to violate the agreements, conditions, and instructions on which they obtained said books. The evidence fails to show that defendants have wrongfully induced any person to break his agreement with complainants.

The facts bearing on this contention are substantially as follows: The defendants "have been compelled to purchase books through secret ways," and the books which they have "succeeded in buying were bought from people who knew the price for which deponent (defendants' agent) bought them, * * * and who were willing

to take the risk of incurring the displeasure of the combined publishers and combined booksellers for the profits that she offered them." In some instances members of the association were required to sign papers or agreements with the American Publishers' Association, but in a great many cases they were not required to sign unless they were newcomers in the business, and, "generally speaking, such signature was only exacted from those traders who were new in the business"; and, if purchasers were asked to sign and refused, the trade was still allowed to sell to them, and would sell to them, and apparently this pledge was to a considerable extent a mere matter of form. It nowhere satisfactorily appears that defendants purchased from complainants' vendees, or from any one who made any contract to obey said rules. It does not appear that defendants' may not have bought from subvendees or from those dealers who refused to sign the pledge as to resale, and to whom the trade was allowed to sell and did sell books.

The evidence fails to show which dealers, if any, from whom defendants purchased books, ever assented to said attempted conditions, or accepted them or agreed to abide by the terms as to retail prices. Such assent or agreement cannot be implied from mere purchases, for such books may have been lawfully sold and bought upon an express refusal to sign said pledge. In the absence of proof of any reservation of right in the copyright by its owner, or of an agreement by the dealers from whom defendant purchased to abide by said rules, or of a wrongful attempt on the part of defendants to induce its vendors to break any contract, there can be no foundation for a claim of contributory infringement of copyright.

In these circumstances, it is unnecessary to apply to the facts proven herein the principles stated in Bobbs-Merrill Company against these defendants, supra, that a violation of the restrictions attempted to be imposed upon sales of copyrighted books is not an infringement of copyright.

The decree is affirmed.